*491 ZINTER, Justice
(concurring specially).
[¶ 36.] I concur. As the Court explains, under the law of collective bargaining (including the “at a minimum” language in SDCL 3-18-8.2), a school board may not impose its last best “offer” on some but not all teachers in the same collective-bargaining unit. I write to add that the terms of the individual and collective agreements at issue refute the dissent’s assertion that disparate salary terms were permissible “because [the seven individual contracts were] binding contracts ... entered into pursuant to the terms of the then current [2005-06 collective] agreement.” See infra ¶ 51.
[¶ 37.] The dissent focuses on the individual contracts of seven of the fifteen new teachers. The dissent argues that the District was permitted to treat those seven contracts differently than all others (including the eight other new teachers’ individual contracts). The dissent reasons that the “District did not have the authority to unilaterally alter the compensation in the binding contracts with [the seven] individual teachers, because the terms of the contracts could be modified only by mutual agreement of the District and the individual teacher.” See infra ¶ 45 (emphasis added). This foundational conclusion is flawed because all teachers signed the same standard “binding contract” containing a specified salary calculated in accordance with the then current 2005-06 collective bargaining agreement.
[¶ 38.] There is no dispute that all new teachers signed individual contracts that were governed by the 2005-06 collective bargaining agreement. The dissent concedes: “[T]he District’s then-current [2005-06] agreement with the Association provided: ‘Individual teacher’s contracts shall be in the form that is provided in Appendix A and will reflect the terms and conditions of this [2005-06 collective] agreement.”’ See infra ¶48 (emphasis added). See also Article VI, section B, 2005-06 collective agreement.[5] There is also no dispute that at the time of impasse, the 2006-07 school year was about to start and there was no new negotiated collective agreement to govern salary and the other terms of employment for the upcoming school year. Therefore, at the time the 2006-07 collective agreement was imposed in August 2006, all teachers were operating under the identical individual form contracts authorized by the 2005-06 collective bargaining agreement.
[¶ 39.] Although all teachers signed identical individual form contracts and were subject to the terms of the 2005-06 collective agreement at the time the 2006-07 collective agreement was imposed, the dissent concludes that seven teachers’ individual contracts required different treatment. The dissent concludes: (1) seven of the new teachers’ individual contracts were “binding contracts” in the sense that those individual teachers must have agreed to a modification; and, (2) the seven new teachers could be given higher salaries because they had “binding contracts ... entered into pursuant to the terms of the then current [2005-06 collective bargaining] agreement.” See infra ¶¶ 45, 51. These conclusions are incorrect because, as pointed out above, all teachers’ individual contracts were identical, all teachers were governed by the same collective bargaining *492 agreement, and all teachers’ individual contracts specified a salary for the upcoming 2006-07 school year. Because the terms of the individual and collective agreements were identical, the District had no contractual basis to impose new salary terms on some contracts while treating the old salary terms as binding in other contracts.
[¶ 40.] The dissent attempts to nullify this obstacle to its conclusion by “presuming” that all but seven teachers “agreed to the addendum to them contract” in order to receive an increased salary, and “had [they] not accepted the addendum to their individual contracts, they would not have been entitled to the higher rate of pay provided in Article X.” See infra ¶ 52. There is, however, no evidence to support the dissent’s appellate presumption that all but seven teachers in this district agreed to have their individual contracts modified to adopt the new salary schedule. On the contrary, if one were to “presume” anything, one must presume the other teachers did not agree to have their individual contracts modified in accordance with the 2006-07 imposed last best offer. After all, a majority of the teachers rejected the District’s last offer, an impasse was declared in negotiating the salary schedule, the District imposed the new salary schedule on all teachers,[6] and the teachers filed a grievance over the matter. Therefore, contrary to the dissent’s argument, the undisputed evidence reflects that the other teachers did not “accept” the new salary schedule. Rather, as the dissent expressly concedes, “[t]he terms of the last offer were later imposed when the Association and District were unable to reach an agreement.” See infra ¶ 50 (emphasis added). These undisputed facts hardly suggest, and clearly do not support, the dissent’s appellate presumption that all but seven teachers in this district agreed to have their contracts modified in accordance with the imposed last best offer.
[¶ 41.] The dissent’s justification for disparate treatment is also inconsistent with the durational clause in the collective agreement. Because all teachers were governed by the 2005-06 collective agreement until the new agreement was imposed, all teachers were governed by the duration clause found in Article XVI of the 2005-06 agreement. That clause specifically provided that the 2005-06 collective agreement (containing the 2005-06 salary schedule) was only to “remain in effect until such time as a subsequent [collective] contract [was] approved by the parties or the implementation of contract terms pursuant to SDCL 3-18-8.2.” (Emphasis added.) Because all teachers were governed by this durational clause, the seven new teachers’ contractual entitlement to the old 2005-06 salary schedule remained only “until” the new 2006-07 salary schedule was negotiated or imposed.
[¶ 42.] Additionally, because the 2005-06 duration clause specifically provided that all teachers would be subject to the terms of the 2006-07 collective agreement when it was negotiated or imposed, the seven new teachers became subject to Article I, section C of the imposed 2006-07 collective agreement. Article I, section C provided, “[i]n case of any direct conflict between the provisions of [the collective] agreement and any Board ... policy, prac-tiee[ ], ... or writing not incorporated in [the 2006-07 collective] agreement, the provisions of [the 2006-07 collective] agreement shall control.” Id. Because the new salary schedule was included in *493 the 2006-07 imposed collective agreement and the 2005-06 salary schedule was not, Article I, section C prevented the District from adopting a policy to pay seven teachers under the old salary schedule that conflicted with the new schedule in the 2006-07 collective agreement.
[¶ 43.] In conclusion, at the time of imposition of the new agreement, the 2005-06 individual and collective agreements were identical and governed both new and returning teachers. The terms of those agreements specified an individual salary for each teacher but contemplated a superseding 2006-07 salary schedule (whether negotiated or imposed). Because the terms of all teachers’ individual and collective agreements were identical, the dissent erroneously concludes that “individual contracts” permitted the District to pay seven of the fifteen new teachers under the 2005-06 salary schedule, while paying all other teachers in the District under the 2006-07 salary schedule.

. Both the 2005-06 and 2006-07 collective agreements contained an identical provision (Article VI, section B) requiring a standard form to be used for all individual contracts. The form was contained in Appendix A to both collective bargaining agreements. Both form contracts contemplated that even though the salary schedule was not contained in the individual contracts, the salary specified in each individual contract was calculated by reference to the salary schedule in the collective agreement.

. It was later, after imposition, that the District discovered the impact of its imposed offer and made individual arrangements (without input from the Association) to change its last best offer for seven teachers.